IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SHAWN JEROME KNOTT, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:17-cv-36-MTT-CHW |
| Warden GREGORY MCLAUGHLIN, | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendant. | : | Before the U.S. Magistrate Judge |

**REPORT AND RECOMMENADTION**

Plaintiff Shawn Jerome Knott claims that Defendant Gregory McLaughlin, Warden of Macon State Prison, impermissibly burdened his religious beliefs by forbidding inmates from participating in congregational prayer services in their living quarters. Before the Court is the Defendant's Motion to Dismiss. (Doc. 11). As discussed below, it is **RECOMMENDED** that the Defendant's Motion be **GRANTED in part and DENIED in part**.

**BACKGROUND**

Plaintiff, an inmate at Macon State Prison, claims that he is a Sunni Muslim and has a religious obligation to participate in congregational prayer five times a day. (Doc. 1, p. 7; Doc. 15-1, p. 5). According to Plaintiff, these prayers last between five and eight minutes. (Doc. 19, p. 5). Along with his Complaint, Plaintiff filed a memorandum from Defendant McLaughlin dated February 26, 2015, which states in relevant part:

> Effective immediately, at no time will offenders be allowed to gather or pray in any area inside of the dorms or living units. Religious services are offered in designated areas of the facility. There will be no religious services or other gathering in the dorms or living units for any reasons unless approved by the Warden.

> An offender is free to pray in his individual assigned cell. M-Building assigned inmates are free to pray near his individual bunk.
>
> Any inmate in violation of this directive will be subject to disciplinary action.

(Doc. 1, p. 10)

The Court may consider the memorandum along with Plaintiff's Complaint for purposes of resolving the Defendant's Motion. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss").

According to Plaintiff, congregational prayers were freely allowed at Macon State Prison before Defendant McLaughlin issued his memo in February 2015. (Doc. 15-1, p. 4). By Plaintiff's account, prior Muslim congregational prayer services were "conducted peacefully and out of the way of others." (*Id.*). Plaintiff alleges that he is "restricted to the living unit" of his dormitory, housing unit E-2, "for the vast majority of the day." (Doc. 15-1, p. 5). Therefore, the memo's ban on congregational prayer services "inside of the dorms or living units" effectively amounts to "a complete prohibition of congregational prayer." (Doc. 19, p. 3). Plaintiff alleges that other forms of group activity "such as card playing, group rap (music) sessions, dice games, [and] group exercise" are not banned. (Doc. 15-1, pp. 8–9). Plaintiff further alleges that the only alternative provided for Muslim congregational prayer is a service provided only once per week, on Fridays. (Doc. 15-1, p. 6).

On March 2, 2015, Plaintiff alleges that he, along with other Muslim inmates, participated in a congregational prayer service in their living quarters, notwithstanding the memo's ban. (Doc. 15-1, p. 6). By Plaintiff's account, the Muslim inmates gathered "peacefully in the corner of the dorm for a short period of time and then dispersed." (Doc. 15-1, p. 6). In

response, Plaintiff alleges that Defendant McLaughlin "had the entire dorm (E-2) of ninety six (96) men placed on lock down for several days (March 2 – 12, 2015) [with the result that] all the inmates in the dorm lost their visitation, phone, recreation, television, and daily shower privileges." (Doc. 15-1, pp. 6–7). The incident caused "hostility towards the Muslims." (Doc. 15-1, p. 7). Plaintiff also received a disciplinary report based on his violation of the memorandum's ban on congregational prayer. (*Id.*).

## AVAILABLE RELIEF

As relief, Plaintiff seeks an injunction allowing him to resume congregational prayer services, as well as nominal and punitive damages. (Doc. 1, p. 9; Doc. 15, p. 2).

As Defendant notes, Plaintiff may not obtain any monetary relief under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277 (2011); *Smith v. Allen*, 502 F.3d 1255, 1271–75 (11th Cir. 2007) (abrogated on other grounds). Further, as Plaintiff does not allege a physical injury or sexual act, Plaintiff may not recover compensatory or punitive damages under Section 1983. *See, e.g.*, *Logan v. Hall*, 604 F. App'x 838, 840–41 (11th Cir. 2015) (construing 42 U.S.C. § 1997e(e)). Additionally, because the Defendant, in his official capacity, is not a "person" under Section 1983, Plaintiff may not recover any damages from the Defendant, in his official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Insofar as Plaintiff seeks monetary relief, Plaintiff is limited to a recovery of nominal damages under Section 1983 from the Defendant, in his individual capacity alone. Insofar as Plaintiff seeks other types of monetary relief, it is **RECOMMENDED** that the Defendant's Motion to Dismiss be **GRANTED**.

In all other respects, it is **RECOMMENDED** that the Defendant's Motion to Dismiss be **DENIED**. Defendant appears to argue that Plaintiff is not entitled to injunctive relief because he has failed to make out a violation of law. (Doc. 11-1, p. 9). As discussed below, however,

3

Plaintiff has alleged sufficient facts to state a claim for relief under both RLUIPA and Section 1983. Accordingly, at this stage in the proceedings, Plaintiff should be allowed to pursue both nominal damages and prospective equitable relief.

## LEGAL STANDARDS

Two legal standards govern this Court's review of the Defendant's Motion to Dismiss. First, for each claim, the Court must determine whether Plaintiff alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim has "facial plausibility" when it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Second, the Defendant has invoked qualified immunity from damages, and has adequately shown that he was acting within the scope of his discretionary authority during the events alleged. (Doc. 11-1, p. 11). Therefore, for each of Plaintiff's claims, the Court must "decide whether the facts … plaintiff has alleged … make out a violation of a constitutional right," and "decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is "clearly established" when (1) materially similar case law controls; (2) case law demonstrates a "broader, clearly established principle that … should control the novel facts of the situation;" or when (3) the allegedly wrongful conduct lies within the core of what a constitutional provision prohibits, or is so bad as to be obviously unlawful. *Jones v. Fransen*, 857 F.3d 843, 851–52 (11th Cir. 2017) (internal punctuation omitted). The underlying inquiry is whether the Defendant had "fair warning" that their conduct violated a constitutional right. *Id.*

## DISCUSSION

Plaintiff states a claim for relief under both RLUIPA and Section 1983, and the Defendant is not entitled to qualified immunity at this stage. Accordingly, the Court should allow Plaintiff to proceed on his congregational prayer claims.

To state a claim for relief under RLUIPA, a plaintiff must plead facts sufficient to show that government action has substantially burdened his religious exercise. *Holt v. Hobbs*, 135 S.Ct. 853, 862–63 (2015). A "substantial burden" is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *See, e.g.*, *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226–28 (11th Cir. 2004) (construing 42 U.S.C. § 2000cc(a)(1)). Plaintiff's allegations, accepted as true and construed in his favor, sufficiently show that the Defendant has substantially burdened Plaintiff's religious exercise. Specifically, on Plaintiff's facts, the Defendant's memorandum banning congregational worship in "dorms or living units," where Plaintiff is confined for "the vast majority of the day," effectively prevents Plaintiff from participating in congregational prayer five times per day, as required by his religion. Instead, Plaintiff is limited to participating in congregational prayer only once per week, on Friday. These allegations by Plaintiff are sufficient, at this stage, to establish a substantial burden. *See Johnson v. Brown*, 581 F. App'x 777, 779–81 (11th Cir. 2014).

For the same reasons, Plaintiff has adequately demonstrated a burden on his religious beliefs sufficient to make out a violation of the Free Exercise Clause of the First Amendment. *See, e.g.*, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) ("To plead a valid free exercise claim, [a plaintiff] must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs'"). Therefore, Plaintiff should also be allowed to proceed on his Section 1983 claim.

In moving for dismissal for failure to state a claim, the Defendant argued only that Plaintiff failed to allege facts sufficient to show a substantial burden on his religious beliefs. The Defendant did not attempt to satisfy his burden under RLUIPA of showing that the challenged congregational prayer ban is (1) in furtherance of a compelling governmental interest, and (2) the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a). Nor did the Defendant argue that its restriction of congregational prayer was "reasonably related to legitimate penological interests," as required under the Free Exercise clause. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). These issues related to the justification for the alleged policy will require factual development, and the Court need not consider them at this stage in the proceedings.

A final issue for the Court's consideration is whether the Defendant is now entitled to qualified immunity from Plaintiff's Section 1983 claim for nominal damages. Qualified immunity is "typically addressed at the summary judgment stage." *Chesser v. Sparks*, 248 F.3d 1117, 1121–22 (11th Cir. 2001). At present, the only "facts" available to the Court are Plaintiff's factual allegations, as well as a copy of the Defendant's memorandum which Plaintiff attached to his initial Complaint. Based on these facts, and as discussed above, Plaintiff has "ma[de] out a violation of a constitutional right" sufficient to satisfy the first prong of the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The second prong of the qualified immunity analysis is whether Plaintiff has shown that the "right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* As noted above, Plaintiff's allegations are sufficient to establish that the prison's policy placed a substantial burden on his religious practice. Under the Free Exercise Clause of the First Amendment, a prison official "may impose limitations on an inmate's sincerely held religious

beliefs if the limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x. 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). Courts must consider four factors in evaluating the reasonableness of such a regulation, as outlined in *Turner v. Safley*, 482 U.S. 78 (1987). Without further factual development as to the penological interests served by the policy, the Court cannot determine whether the policy was consistent with clearly established law. Accordingly, the Defendant is not entitled to a dismissal on qualified immunity grounds at this stage of the proceedings.

## **CONCLUSION**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 1st day of November, 2017.

s/ Charles H. Weigle_____<br>
Charles H. Weigle<br>
United States Magistrate Judge