IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHAWN JEROME KNOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 5:17-CV-36 (MTT) |
| Warden GREGORY MCLAUGHLIN, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

United States Magistrate Judge Charles H. Weigle recommends granting in part and denying in part Defendant Warden Gregory McLaughlin's motion for summary judgment (Doc. 38). Doc. 49. Specifically, the Magistrate Judge recommends allowing Plaintiff Jerome Knott's Religious Land Use and Institutionalized Persons Act (RLUIPA) claim to proceed to trial and dismissing his First Amendment claim. *Id.* Both parties have objected to the Recommendation. Docs. 50; 51. Pursuant to 28 U.S.C. § 636(b)(1), the Court has considered the parties' objections (Docs. 50; 51) and has made a de novo determination of the portions of the Recommendation (Doc. 49) to which the parties object. For the following reasons, the Recommendation (Doc. 49) is **ADOPTED as modified**.

## I. BACKGROUND[1]

The Plaintiff filed this action against the Defendant in his official and individual capacities on January 30, 2017, seeking injunctive relief and $10,000 in damages under RLUIPA and 42 U.S.C. § 1983 for alleged violations of his rights under the First Amendment.  Doc. 1 at 9.  Specifically, the Plaintiff alleges that on February 26, 2015, the Defendant issued a memorandum stating that inmates at Macon State Prison (MSP) no longer will be allowed "to gather or pray in any area inside of the dorms or living units," including the common area.  *Id.* at 10.  The Plaintiff, a Muslim inmate at MSP, states that it is "central to his faith" to offer five daily prayers "in congregation (where there are two or more Muslims present)."  *Id.* at 7.  The Plaintiff argues that the Defendant violated his First Amendment rights and RLUIPA by ordering him to offer his five daily prayers individually in his cell rather than congregationally.  *Id.* at 8.

Earlier, the Defendant moved to dismiss.  Doc. 11.  The Court, adopting the Magistrate Judge's Recommendation (Doc. 21), partially granted the Defendant's motion.  Doc. 22.  The Court ruled that the Plaintiff could only recover injunctive relief for the alleged RLUIPA violation because the Plaintiff could only sue the Defendant in his official capacity, and limited the Plaintiff's relief under his First Amendment claim to injunctive relief and nominal damages.  *Id.*  The motion was otherwise denied.  *Id.*  After discovery, the Defendant moved for summary judgment.  Doc. 38.  The Plaintiff responded.  Doc. 44.  The Magistrate Judge recommends (1) that the Plaintiff's RLUIPA claim proceed to trial because there are genuine issues of material fact regarding whether banning congregational prayer places a substantial burden on the Plaintiff's

---

[1] Unless stated otherwise, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

religious exercise and is the least restrictive means of furthering MSP's compelling interest in prison security; but (2) that the Plaintiff's First Amendment claim be dismissed because the ban was reasonably related to MSP's legitimate penological interests. Doc. 49 at 9. As will be discussed, the superficially conflicting recommendations are the result of the different standards for RLUIPA and § 1983 First Amendment Free Exercise claims. Both parties objected to the Recommendation. Docs. 50; 51.

## II. SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (emphasis in original). Rather, the moving

party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).

"Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324). "A party asserting that a fact is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). "The nonmoving party does not satisfy its burden if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249-50). In a case regarding allegations of constitutional and statutory violations, the plaintiff must produce more than a "scintilla of evidence"—or evidence of which a reasonable jury could rely on to rule in the plaintiff's favor—showing that the defendant violated his constitutional and statutory rights. *Presley v. Edwards*, 2007 WL 174153, at *3 (M.D. Ga. 2007) (quoting *Anderson*, 477 U.S. at 251) (other citations omitted). Further, where a party fails to address another party's assertion of fact as required by Rule 56(c) of the Federal Rules of Civil Procedure, the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate references from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. RLUIPA Claim

Prison officials may not "substantially burden" prisoners' religious exercises unless the prison officials use the least restrictive means to further a compelling governmental interest. 42 U.S.C. 2000cc-1(a). "Once a plaintiff proves that a challenged practice substantially burdens his religious exercise, the burden shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 532 (11th Cir. 2013) (citing 42 U.S.C. § 2000cc-2(b)) (other citation omitted). "RLUIPA applies strict scrutiny to government actions that substantially burden the religious exercise of institutionalized persons[.]" *Benning v. Georgia*, 391 F.3d 1299, 1304 (11th Cir. 2004) (citation omitted).

In his objection, the Defendant argues that (1) the Plaintiff has not met his initial burden of showing that the Defendant's restriction on congregational prayer substantially burdens his exercise of religion; (2) even if the Defendant's restriction substantially burdens the Plaintiff's exercise of religion, the restriction is narrowly tailored and is the least restrictive means of furthering a compelling governmental interest; (3) the Defendant is entitled to qualified immunity;[2] and (4) the Plaintiff is not entitled to injunctive relief. Doc. 50 at 2, 7-8, 12, 14.

---

[2] The Defendant successfully argued in his motion to dismiss that RLUIPA does not authorize individual-capacity suits. Docs. 11-1 at 4 (citing *Stewart v. Beach*, 701 F.3d 1322, 1333-34 (10th Cir. 2012); *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012)); 21 at 3; 22; *see also Hathcock v. Cohen*, 287 F. App'x 793, 798 n.6 (11th Cir. 2008) ("[I]ndividual capacity RLUIPA claims are not cognizable."). It is unclear why the Defendant is now arguing that he is entitled to qualified immunity for the RLUIPA claim. Because the Defendant in his individual capacity is not a party to this claim, qualified immunity is irrelevant. *Id.*

### 1. Substantial Burden

The Defendant argues that the Plaintiff is not substantially burdened because he "is not *completely* prevented from performing the five daily prayers." *Id.* at 4 (emphasis added). Relying on *Holt v. Hobbs*, 135 S. Ct. 853 (2015), the Defendant claims his partial ban on prayer is not a substantial burden. *Id.* In *Holt*, the Supreme Court held that a prison's policy banning beards violated RLUIPA because a tenet of Hobbs' religion forbade trimming facial hair, and thus the ban completely prevented him from participating in a religiously mandated activity. 135 S. Ct. 853, 859-61 (2015). Here, the Defendant argues the Plaintiff "is free to pray in his individual cell" and "retains the ability to participate in small-group Koran study within the common areas of [MSP]." Doc. 50 at 4. In other words, the Defendant argues (1) that congregational prayer is a mere preference rather than a central tenet of the Plaintiff's faith and (2) that he has alternative means of exercising his religion, and therefore, the Defendant did not substantially burden the Plaintiff's exercise of religion. *See id.*

As the Magistrate Judge correctly found, the facts are disputed and the Court cannot say as a matter of law that congregational prayer is not a central tenet of the Plaintiff's religion. Doc. 49 at 10; *compare* Doc. 38-5 ¶ 24 *with* Docs. 44-5 ¶ 5; 44-7 ¶ 5. RLUIPA defines "religious exercise" as "*any* exercise of religion, *w*hether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(a) (emphasis added). The Defendant's first argument thus fails.

As for the argument that the Plaintiff has other ways to worship, the Magistrate Judge also correctly found that "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . ., not whether the RLUIPA

claimant is able to engage in other forms of religious exercise." Doc. 49 at 11 (citing *Holt*, 135 S. Ct. at 863) (internal quotation marks omitted). A "substantial burden requires something more than an incidental effect on religious exercise." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) (internal quotation marks omitted). "An individual's exercise of religion is substantially burdened if a regulation *completely* prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by a religion," or pressure from the government "directly coerces the religious adherent to *conform* his or her behavior accordingly." *Id.* (emphasis added) (internal quotation marks and citations omitted). The Defendant required the Plaintiff to *completely conform* his exercise of congregational prayer by requiring the Plaintiff to pray individually in his cell rather than with other Muslim prisoners in the common area. The Plaintiff is allowed to pray, but he is not allowed to pray in a way that he claims is required by his religion.

The Magistrate Judge also correctly noted that the Defendant's argument that the Plaintiff has alternative means of exercising his religion "misconstrues the substantial burden inquiry, which asks only whether the religious adherent has been pressured to conform his or her behavior based on state action." Doc. 49 at 11 (citing *Midrash Sephardi, Inc.*, 366 F.3d at 1227). The fact that the Plaintiff is only allowed to pray alone inside his cell suggests exactly that: The Defendant has pressured the Plaintiff to conform his religious behavior by requiring him to pray individually rather than congregationally.

The Plaintiff has established a genuine issue of material fact regarding whether congregational prayer is a central tenet of his religion and whether the Defendant's

complete ban on congregational prayer substantially burdens his exercise of religion. Thus, the Court cannot say as a matter of law that the Defendant did not violate the Plaintiff's rights under RLUIPA.

### 2. Least Restrictive Means

Once a plaintiff establishes that there is a dispute of fact that a prison's practice substantially burdens his religious exercise, the burden shifts to the defendant to meet the "exceptionally demanding" least restrictive means test. *Holt*, 135 S. Ct. at 859-60. This test requires the Defendant to demonstrate that the substantial burden on the Plaintiff's religious exercise rights (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest. *Id.* at 862 (citing 42 U.S.C. § 2000cc-1(a)). The Defendant argues that the ban on congregational prayer was the least restrictive means of furthering the Defendant's compelling governmental interest of prison security. Doc. 50 at 4.

The Court agrees that "prison security is a compelling state interest, and that deference is due to institutional officers' expertise in this area." *Holt*, 135 S. Ct. at 868. Even assuming—without deciding—that the Defendant's ban was in furtherance of this compelling interest, the Defendant "fail[ed] to show that there is no genuine issue of material fact as to RLUIPA's second prong, which requires the Defendant to demonstrate that the February 26, 2015 memorandum's ban on congregational prayer is the least restrictive means of furthering a compelling governmental interest." Doc. 49 at 18 (internal punctuation and citation omitted). To satisfy the second prong of the least restrictive means test, the Defendant must show that "'it lacks other means of achieving its desired goal without imposing a substantial burden'" on the Plaintiff.

*United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341, 1348 (11th Cir. 2016) (quoting *Holt*, 135 S. Ct. at 864).

The Defendant has failed to do so here. Instead, the Defendant relies on his assertion that he has not placed a "wholesale ban" on the Plaintiff's religious exercise because the Plaintiff is allowed to celebrate Jumu'ah, attend other religious services, and pray individually in his cell, which the Defendant believes is a less restrictive alternative to completely banning the Plaintiff from praying. Doc. 50 at 7. These alternative means of religious exercise are valid arguments in opposition to the Plaintiff's First Amendment claim, but not to his RLUIPA claim; the Constitution is the floor, but RLUIPA requires more.[3] *Holt*, 135 S. Ct. at 860 (citations omitted); *Smith v. Allen*, 502 F.3d 1255, 1264 n.5 (11th Cir. 2007) ("RLUIPA offers greater protection to religious exercise than the First Amendment offers.") (citing *Charles v. Frank*, 101 F. App'x 634, 635 (7th Cir. 2004)), *abrogated in part on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

As discussed above, multiple group activities occur in the common area, such as card games, group exercise, and small-group Koran study. Docs. 38-2 ¶¶ 44, 45; 38-4 ¶ 15; 44-6 ¶ 11. Without citing to any evidence, the Defendant argues that these group activities do not cause "tension, hostility, and the potential for violence, as compared to congregational religious activities." Doc. 50 at 9. The Plaintiff, on the other hand, provides evidence that "TVs by far pose the greatest threat of potential violence and conflict amongst inmates." Doc. 44-7 ¶ 18. The Defendant's "proffered objectives are not pursued with respect to analogous nonreligious conduct, which suggests that those

---

[3] "[N]othing prevents Congress from enacting laws that provide greater protections" than the Constitution requires. *See United States v. Touset*, 890 F.3d 1227, 1236 (11th Cir. 2018).

interests could be achieved by narrower ordinances that burdened religion to a far lesser degree."  *Holt*, 135 S. Ct. at 866 (internal quotation marks and citation omitted); *see Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1246 (11th Cir. 2011) (rejecting the city's compelling interest argument because the "proffered interests . . . [were] not pursued against analogous nonreligious conduct" (internal quotation marks omitted)).

When viewed in the light most favorable to the Plaintiff, who provides ample evidence that inmates prayed peacefully as a group in the common area and that other group activities in the common area cause more tension than congregational prayer, the Defendant has failed to establish as matter of law that he has implemented the least restrictive means of furthering a compelling governmental interest.  Accordingly, the Defendant's motion for summary judgment on the Plaintiff's RLUIPA claim is **DENIED**.

### 3.  Injunctive Relief

The Defendant argues that, in any event, the Plaintiff is not entitled to injunctive relief under the Prison Litigation Reform Act (PLRA).  Doc. 50 at 14.  The PLRA prohibits the Court from granting injunctive relief unless it finds that (1) the relief is required by federal law; (2) "the relief is necessary to correct the violation of a Federal right;" and (3) "no other relief will correct the violation."  18 U.S.C. § 3626(a)(1)(B).  Without citing any case law, the Defendant states that the Plaintiff failed to establish a violation of a federal right, the remedy the Plaintiff seeks is not narrowly drawn, and the remedy the Plaintiff seeks is not the "least intrusive means to correct any alleged violation."  Doc. 50 at 14.

The Defendant's argument is patently without merit. "RLUIPA creates a private cause of action for a prison inmate . . . and further provides that the complaining party, if successful, may 'obtain appropriate relief against a government,'" which includes state officers and persons acting under color of state law. *Smith*, 502 F.3d at 1269 (quoting 42 U.S.C. § 2000cc-2(a)), *abrogated in part on other grounds by Sossamon*, 563 U.S. 277. "The phrase 'appropriate relief' in RLUIPA encompasses . . . injunctive relief." *Id.* at 1271. As discussed, the Plaintiff's RLUIPA claim is going forward, and the Court cannot say as a matter of law that he is not entitled to injunctive relief.

## B. First Amendment Claim[4]

The Plaintiff objects to the Magistrate Judge's recommendation that his First Amendment claim be dismissed. Doc. 51. In "prisoners' rights" cases, courts should determine whether the plaintiff met his burden of showing that his religious exercise has been substantially burdened by a prison regulation before inquiring whether the defendant has met his burden of showing that his regulation is "reasonably related" to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). As previously discussed, the Plaintiff

---

[4] The Plaintiff sued the Defendant in his individual and official capacities under 42 U.S.C. § 1983 for a First Amendment violation. *See generally* Doc. 1; *see also* Doc. 22 (adopting the Magistrate Judge's recommendation (Doc. 21 at 3) that the Plaintiff should be allowed to recover only injunctive relief from the Defendant in his official capacity and only injunctive relief and nominal damages from the Defendant in his individual capacity). The Defendant did not object to this portion of the Recommendation (Doc. 49). *See generally* Doc. 50. Even if the Plaintiff's First Amendment claim did not fail as a matter of law for the reasons discussed in this section, the Defendant would be entitled to qualified immunity in his individual capacity for this claim, and the Plaintiff would only be able to recover injunctive relief from the Defendant in his official capacity. *Muhammad v. Wainwright*, 839 F.2d 1422, 1423-24 (1987) (holding that the prison official was protected by qualified immunity for the prisoner's First Amendment claim because the official was performing a discretionary function, and his conduct did not "violate *clearly established* [law]") (citations omitted); *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (holding that discretionary authority includes all actions taken by an official pursuant to his duties and within his authority); *Sterling v. Sellers*, 2018 WL 4689462, at *6 (M.D. Ga. 2018) (finding no clearly established law establishing a prisoner's right to congregational prayer in the prison's common area).

has met his burden of showing that the Defendant has substantially burdened the Plaintiff's exercise of religion under RLUIPA, and the Plaintiff has also met his burden of showing that the Defendant has substantially burdened the Plaintiff's exercise of religion under the First Amendment. *Id.* at 345 (holding that the plaintiff's First Amendment rights were substantially burdened because he could not attend Jumu'ah, which he sincerely believed was "commanded by the Koran").

The burden now shifts to the Defendant to show that his regulation that substantially burdened the Plaintiff's exercise of religion is reasonably related to a legitimate penological interest. *Id.* The courts must weigh the four factors outlined in *Turner v. Safley*, 482 U.S. 78 (1987), to determine the reasonableness of the prison regulation: (1) whether the regulation has a logical connection to legitimate penological interests; (2) whether alternative means of exercising a constitutional right remain open; (3) the impact that accommodation of the plaintiff's asserted right would have on other inmates, prison personnel, and allocation of prison resources generally; and (4) the absence of ready alternatives. 482 U.S. at 89-90. These factors are applied by courts less stringently in a First Amendment claim than in a RLUIPA claim. *Id.* at 89 (holding that the lower court erred when it applied a strict scrutiny analysis to a First Amendment Free Exercise claim); *Benning*, 391 F.3d at 1304 ("Section 3 of RLUIPA applies strict scrutiny to government actions that substantially burden the religious exercise of institutionalized persons.") (citation omitted); *see also* Doc. 11 at 7 ("Courts must consider four factors in evaluating the reasonableness of such a regulation, as outlined in *Turner*. . . ."). Unlike RLUIPA, the First Amendment inquiry affords greater deference to prison officials. *O'Lone*, 482 U.S. at 349 (citing *Turner*, 482 U.S. at 89).

In his objection, the Plaintiff argues that the Magistrate Judge's reliance on *Sterling v. Sellers*, 2018 WL 4689462 (M.D. Ga. 2018), to conclude that a ban on congregational prayer was reasonable is incorrect because *Sterling* did not rely on this four-part test outlined in *Turner*. Doc. 51 at 4. The Court agrees that the *Turner* factors should have been considered, and the Court does that now.

1. **Logical Connection to a Legitimate Penological Interest**

The first *Turner* factor is easily met by the Defendant. Prison security is a legitimate penological interest. *Bell v. Wolfish*, 441 U.S. 520, 550-51 (1979). This legitimate interest was advanced by the ban to prevent potential violence and hostility between inmates, which were caused by the congregational prayers. "[I]t cannot seriously be maintained that 'the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.'" *O'Lone*, 482 U.S. at 350 (holding that prison overcrowding was a legitimate governmental interest and requiring Muslim prisoners to work outside during a religious service held inside the prison due to overcrowding resulted in a logical connection to that interest) (quoting *Turner*, 482 U.S. at 89-90). The Defendant has thus shown a logical connection to a legitimate penological interest.

2. **Alternative Means**

The Defendant has also demonstrated that the Plaintiff has other means of exercising his religion. In *O'Lone v. Estate of Shabazz*, the Supreme Court held that if an inmate was not deprived of "*all* means of [religious] expression," then the prison was not required to "sacrifice legitimate penological objectives to that end." *Id.* at 351-52 (citing *Turner*, 482 U.S. at 92) (emphasis added). Because the inmate in *O'Lone* was

given different meals whenever pork was served, allowed to observe Ramadan, awakened at 4:00 a.m. for an early breakfast, and allowed to observe "a number of [other] religious obligations" of his Islamic faith, the prison met the alternative means test under the First Amendment, even though the prison did not provide other means of attending Jumu'ah, which had to occur at a particular time according to the Islamic faith when the inmate was not allowed inside the prison due to overcrowding. *Id.* Like the inmate in *O'Lone*, the Plaintiff has several alternative means to exercise his religion, such as celebrating Jumu'ah, attending other religious services, engaging in group Koran study, and praying individually in his cell. Doc. 50 at 7. For purposes of First Amendment analysis, the Defendant has adequately shown that he is accommodating the Plaintiff's religious exercises without compromising MSP's safety goals.

The Court recognizes that this is not enough under RLUIPA's least restrictive means analysis. Under the First Amendment's alternative means analysis, the Court considers whether the prison has provided alternative means for inmates to exercise their religion when it places a total ban on a particular religious exercise, not whether the prison has imposed the least restrictive means for inmates to perform the specific religious exercise. *See Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 972 (11th Cir. 2018) (citations omitted). RLUIPA places a greater burden on prisons to justify their controversial regulations by requiring them to show that they implemented the least restrictive means when they banned a specific religious exercise. *Holt*, 135 S. Ct. at 860 (citations omitted); *Smith*, 502 F.3d at 1264 n.5 ("RLUIPA offers greater protection to religious exercise than the First Amendment offers.") (citing *Charles*, 101 F. App'x at 635), *abrogated in part on other grounds by Sossamon*, 563 U.S. 277. The

First Amendment alternative means analysis forbids the Court from substituting its judgment on "difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of running a prison." *O'Lone*, 482 U.S. at 353 (internal quotation marks and citation omitted). Therefore, a total ban on a particular religious exercise is not necessarily a violation of the First Amendment—although it may be a RLUIPA violation—if the prison shows that it provided alternative means for inmates to exercise their religion.

The Defendant has shown that he provides the Plaintiff with several alternative means to exercise his religion, including the alternative of praying individually in his cell. The Defendant has thus satisfied the alternative means test for the Plaintiff's First Amendment claim.

### 3. Impact of the Accommodation on Inmates, Prison Personnel, and Allocation of Prison Resources Generally, and the Absence of Ready Alternatives

The Defendant has also provided sufficient evidence that allowing the Plaintiff to pray congregationally has a significant impact on other inmates, MSP personnel, and MSP's resources, and that there is an absence of ready alternatives. The Plaintiff argues that because congregational prayer in the common area was allowed before, it has no impact on other inmates, prison personnel, and prison resources now. Doc. 51 at 6. He also suggests that if it does have such an impact, the Defendant has the "ready alternative" of allowing congregational prayer in the rooms adjoining the common area, such as the "TV or game rooms" and "counselors' offices." *Id.* at 7.

These arguments are unpersuasive rebuttals to the Defendant's arguments that congregational prayer creates hostility and potential violence among the inmates; there

is not enough prison staff to transport the Muslim inmates to another room multiple times a day for congregational prayer; and allowing the inmates to pray congregationally in an adjoining area, such as the TV room, would take up space that is already being used by inmates for other purposes. Doc. 50 at 5-6, 9-10. The hostility between inmates caused by congregational prayer is a threat to prison security. That threat could maximize if the inmates prayed congregationally in a smaller area that is already being used by other inmates for other purposes. This "ripple effect" increases the burden on the MSP staff. *Turner*, 482 U.S. at 90 (holding that when an accommodation has a "ripple effect" on prison staff, "courts should be particularly deferential to the informed discretion of prison officials"). Increasing the MSP staff's time and resources in an attempt to detect and prevent potential security problems engendered by congregational prayers performed five times daily in the common area would "'unduly distract[] prison officials from the day-to-day affairs they must manage in order to maintain a safe atmosphere for everyone in the prison environment.'" *Prison Legal News*, 890 F.3d at 973 (quoting *Woods v. Comm'r of the Ind. Dep't of Corr.*, 562 F.3d 745, 750 (7th Cir. 2011)).

Furthermore, the lack of prison staff and resources makes it clear that there are no "obvious, easy alternatives to the policy adopted by the Defendant." *Turner*, 482 U.S. at 93. The "existence of obvious, easy alternatives may be evidence that the regulation . . . is an exaggerated response" to a problem, while the "absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* The Defendant's decision to ban congregational prayer in the common area is not an exaggerated response to his security concerns. Although the Defendant admits that

there is a multipurpose room where other religious services are held, MSP does not have the staff resources available to transport the Plaintiff and other Muslim inmates to the multipurpose room five times a day for their congregational prayers. "The Supreme Court has made it patently clear that the Constitution does not mandate a lowest common denominator security standard[.]" *Prison Legal News*, 890 F.3d at 974. Providing an accommodation "would be inconsistent with the legitimate concerns underlying [the Defendant's memorandum]." *O'Lone*, 482 U.S. at 352-53. Like the first two factors, the third and fourth factors favor the Defendant by showing that his ban is a reasonable response to a legitimate penological interest.

The Court recognizes that these facts are the same facts which the Court found insufficient to meet the Defendant's burden under RLUIPA to justify the ban on congregational prayer. Again, that is because the Defendant shouldered a heavier burden under RLUIPA. In sum, after weighing the *Turner* factors, the Court concludes the Defendant has established as a matter of law that the ban on congregational prayer is reasonably related to a legitimate penological interest. Accordingly, the Defendant's motion for summary judgment on the Plaintiff's First Amendment claim is **GRANTED**, and the Plaintiff's First Amendment claim is **DISMISSED with prejudice**.

## IV. CONCLUSION

The Court has reviewed the Recommendation, and the Court accepts and adopts as modified the findings, conclusions, and recommendations of the Magistrate Judge. The Recommendation (Doc. 49) is **ADOPTED as modified** and made the order of the Court. Accordingly, the Defendant's motion for summary judgment (Doc. 38) is **GRANTED in part** and **DENIED in part**. The Plaintiff's RLUIPA claim against the

Defendant in his official capacity may proceed to trial, and his First Amendment claim is **DISMISSED with prejudice**. Because only injunctive relief is available under RLUIPA, the Plaintiff may not receive monetary damages.

**SO ORDERED**, this 27th day of March, 2019.

<pre>
                                    S/ Marc T. Treadwell
                                    MARC T. TREADWELL, JUDGE
                                    UNITED STATES DISTRICT COURT
</pre>